USCA1 Opinion

 

 September 27, 1995 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-2095 NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION, ET AL., Plaintiffs, Appellants, v. TOWN OF PLAISTOW, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this court, issued on September 20, 1995, is amended as follows: On page 12, line 8 of first full paragraph, replace "making" with "make". UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-2095 NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION, ET AL., Plaintiffs, Appellants, v. TOWN OF PLAISTOW, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge] __________________________ ____________________ Before Cyr, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Mark I. Zarrow with whom Lian, Zarrow, Eynon & Shea was on briefs ______________ __________________________ for appellants. Melinda S. Gehris with whom Marjorie E. Lanier and Devine, ___________________ ____________________ _______ Millimet & Branch, P.A. were on brief for appellee. _______________________ ____________________ September 20, 1995 ____________________ BOUDIN, Circuit Judge. This appeal presents a challenge _____________ to a town zoning ordinance and cease and desist order that limit night-time access to and from a local trucking terminal. Appellants are the terminal owner, the terminal operator, various interstate motor carriers that regularly use the terminal, and an association representing New Hampshire truckers. Appellee is the Town of Plaistow, New Hampshire, ("the town"), which adopted the restrictions at issue. The terminal is located on a site partly in Plaistow and partly in Newton, New Hampshire. The trucking terminal began operation in September 1988. It serves as a regional hub for various trucking companies serving the New England area. Line haulers from around the country drop off freight to be delivered in New England and pick up freight whose destination lies outside New England. Atlas Motor Express, Inc. ("Atlas"), the operator of the terminal, maintains a fleet of trucks and provides short haul service within the New England area. The terminal operates 24 hours a day, loading and unloading trailers.  Most trucks that use the Plaistow/Newton terminal reach it from Interstate 495, a federal highway that runs through Massachusetts and near the New Hampshire border. From Interstate 495, trucks travel about 5 miles on Route 125 to Kingston Road (both are New Hampshire state highways) and then about half a mile to Garland Way, the terminal's private -2- -2- access road. Trucks must travel roughly 2000 feet along Garland Way, the first portion of which passes through the Plaistow residential zone. The terminal's facilities are all located in Newton in an industrial zone bordering on Plaistow. Shortly after the terminal opened, numerous residents from Plaistow who live along Kingston Road near Garland Way complained about late night truck traffic to and from the terminal. The town subsequently served a cease and desist order on Atlas and the terminal owner, alleging a violation of a Town of Plaistow zoning ordinance that reads in pertinent part: Any uses that may be obnoxious or injurious by reason of the production or emission of odors, dust, smoke, refuse matter, fumes, noise, vibration or other similar conditions, or that are dangerous to the comfort, peace, enjoyment, health or safety of the community, whether it contributes to its disturbance or annoyances are prohibited in all districts. The cease and desist order stated that "heavy commercial trucking arriving at and leaving [the] site is emitting odors, smoke, fumes, noise and vibration around the clock." Despite the order, late night traffic to and from the terminal continued.  The town then brought an action in New Hampshire Superior Court seeking an injunction against the terminal and an order imposing reasonable hours of operation. The state court entered a preliminary injunction on February 28, 1989, -3- -3- placing a curfew on night-time access to and from the terminal. After an evidentiary hearing, the court entered a permanent injunction on July 7, 1989, limiting the terminal's night-time traffic as follows: 6:00 a.m. to 9:00 p.m.: No restrictions. 9:00 p.m. to 11:00 p.m.: Two trucks may arrive or depart. 11:00 p.m. to 5:00 a.m.: No trucks may arrive or depart. 5:00 a.m. to 6:00 a.m.: Three trucks may arrive or depart.  The New Hampshire Supreme Court denied the terminal's request for appellate review. On March 26, 1993, appellants filed a federal suit against the town, alleging that the enforcement of the Plaistow zoning ordinance was preempted by various federal statutes and by the Commerce Clause. U.S. Const., Art. I,  8. On October 25, 1993, the district court granted the town's motion to dismiss, for failure to state a claim, the appellants' claim that the injunction was preempted by the Noise Control Act of 1972, 42 U.S.C. 4901 et seq. New _______ ___ Hampshire Motor Transport Ass'n v. Town of Plaistow, 836 F. _______________________________ ________________ Supp. 59 (D.N.H. 1993). A three-day bench trial followed in August 1994. Thereafter, the district court ruled that the injunction limiting night-time access to and from the trucking terminal was not preempted by two other federal statutes invoked by the appellants--the Surface Transportation Assistance Act of -4- -4- 1982, 49 U.S.C. 31101 et seq., and the Hazardous Materials _______ Transportation Uniform Safety Act of 1990, 49 U.S.C. 5101 et seq.--and did not violate the Commerce Clause. This ________ appeal followed. We agree with the district court's determinations and affirm. 1. The town urges that the district court judgment be upheld, without reaching the merits, on the ground that the state court enforcement action is res judicata as to all of ____________ the appellants. The reach of a prior state court judgment is determined by state law. Migra v. Warren City School _____ ____________________ District Board of Education, 465 U.S. 75 (1984). Under New ___________________________ Hampshire law, we think that the prior judgment does not foreclose the present suit, at least by appellants who were not parties to the state court action. The only defendants in the state court action were the terminal owner and its operator. Non-parties can be bound where they are in privity with parties to prior litigation, and the privity concept is fairly elastic under New Hampshire law, as elsewhere. But normally something more is required for privity between the prior and present litigants than merely a common interest in the outcome. Daigle v. City of ______ _______ Portsmouth, 534 A.2d 689, 694 (N.H. 1987). See also Gonzalez __________ ________ ________ v. Banco Cent. Corp., 27 F.3d 751, 756-63 (1st Cir. 1994) __________________ (interpreting federal law).  -5- -5- Here, there is no indication that the appellant interstate carriers even knew of, let alone controlled, the prior litigation. Although the town points out that the same law firm represents all of the appellants, the interstate carriers are not claimed to have controlled or managed the original state court litigation from behind the scenes. Cf. ___ Montana v. United States, 440 U.S. 147, 154 (1979); General _______ _____________ _______ Foods v. Massachusetts Dept. of Pub. Health, 648 F.2d 784, _____ ___________________________________ 789 (1st Cir. 1981). It is also plain that the interstate carriers who use the terminal on a regular basis have a real and distinct interest in nullifying the town's restriction. Finally, we note that with the exception of the Commerce Clause issue, the federal issues were apparently not litigated in the state court. This would not necessarily defeat a valid claim of res judicata, see, e.g., Stuhlreyer _____________ ___ ____ __________ v. Armco, Inc., 12 F.3d 75, 77 (6th Cir. 1993), but it ___________ encourages us to resolve any doubts in favor of allowing the carriers to sue. Since the merits must be reached on the appeals by the interstate carriers, we need not consider the stronger claim of foreclosure against the owner and operator of the terminal.  2. Turning to the merits, our review of the district court's preemption analyses is plenary, Ellenwood v. Exxon _________ _____ Shipping Co., 984 F.2d 1270, 1273 n.4 (1st Cir.), cert. _____________ _____ denied, 113 S. Ct. 2987 (1993), and we address in turn each ______ -6- -6- of the statutes relied on by appellants as a separate ground for preemption. Among these, the most important is the Surface Transportation Assistance Act of 1982 ("the Surface Act"), as amended by the Tandem Truck Safety Act of 1984 ("the Tandem Act"), now codified at 49 U.S.C. 31111 et seq. _______ These statutes together establish uniform, national standards for the maximum size and weight of trucks and trailers used in interstate commerce. As amended, the Surface Act forbids the states from enacting or enforcing laws that prohibit trucks and trailers of approved length and weight from travelling on the national network, i.e., the system of interstate highways and other ____ federally-funded primary routes designated by the Secretary of Transportation. 49 U.S.C. 31111(e); 23 C.F.R. 658.5. The Surface Act also prohibits states from denying approved trucks and trailers "reasonable access" between the national network and "terminals." 49 U.S.C. 31114. This provision, which is at the heart of this case, reads as follows: 31114. Access to the Interstate System (a) Prohibition on denying access. A State may not enact or enforce a law denying to a commercial motor vehicle subject to this subchapter or subchapter I of this chapter reasonable access between-- (1) the Dwight D. Eisenhower System of Interstate and Defense Highways (except a segment exempted under section 31111(f) or 31113(e) of this title) and other qualifying Federal-aid Primary System highways designated -7- -7- by the Secretary of Transportation [i.e., the ____ national network]; and  (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household good carriers, motor carriers of passengers, or any truck tractor- semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title. (b) Exception.--This section does not prevent a State or local government from imposing reasonable restrictions, based on safety considerations, on a truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.  The district court ruled that the local curfew did not deny reasonable access to trucks wishing to use the Atlas terminal. The terminal is located between five and six miles from Interstate 495, the nearest juncture with the national network. (Route 125 in Plaistow is not a part of the national network. See 23 C.F.R. 658, app. A (New ___ Hampshire.)) Given this distance, and Plaistow's legitimate interest in curbing noise, odor and dust in its residential areas, the district court found that the night-time restrictions were a reasonable compromise.  On this appeal, the truckers first say that the "reasonable access" provision limits state restrictions to those based on safety. This is a straightforward issue of statutory construction which, absent the "exception" clause -8- -8- quoted above, would easily be resolved in the town's favor. After all, the main provision requires "reasonable access." 49 U.S.C. 31114(a). "Reasonable" is a comprehensive term, United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st _____________ _________________ Cir. 1991), cert. denied, 502 U.S. 1030 (1992), and nothing _____________ in language or common-sense makes reasonableness turn solely on safety considerations.  Context reenforces this view. The "[p]rohibition on denying access," 49 U.S.C. 31114, extends far beyond the operation of interstate highways or federally funded state roads that are designated parts of the national network. Local roads and other facilities are also covered by the provision to the extent needed to assure reasonable access to the national network. 23 C.F.R. 658.19. The guarantee of reasonable access thus has a formidable reach, extending to local regulatory measures that operate miles away from any interstate or national network highway. Many of these measures are designed to safeguard interests other than safety. Consider, for example, a restriction that routed heavy traffic on a detour of a few miles to assure quiet in a hospital zone. It is difficult to conceive that Congress meant to exclude such a concern from the calculus used to determine whether a restriction infringes on "reasonable access" to the federal highway -9- -9- system. In this instance, language and policy are as one in opposing such a restrictive reading. The sole argument for limiting the restrictions to safety matters stems from the exception provision, now codified as 49 U.S.C. 31114(b). As a matter of language, this provision permits, but does not compel, a negative inference that the only restrictions allowed under the main provision are safety restrictions. Because subsections (a) and (b) do not fit neatly together, it is difficult to be absolutely certain of Congress' intent. But for several reasons we reject the suggestion that subsection (b) narrows by inference the concept of reasonableness in subsection (a). First, the negative inference is flawed as a matter of language. By its terms the safety exception in subsection (b) is concerned not with safety limitations generally but with restrictions on truck tractor-semitrailer combinations. If the exception were taken to narrow the restrictions permitted under the main "reasonable access" provision, then arguably the only restrictions allowed would be safety ____ restrictions directed to truck tractor semitrailer combinations, an extremely odd result. Second, the original 1982 Surface Act contained the reasonable access language with no exception provision; so __ nothing in 1982 suggested that state access restrictions were -10- -10- limited to those based on safety.1 If Congress in 1984 had intended to alter the reasonable access provision so as to limit the states to safety restrictions, one might reasonably expect some indication of this purpose at least in the legislative history. Cf. Sierra Club v. Secretary of Army, ___ ___________ _________________ 820 F.2d 513, 522 (1st Cir. 1987). Congress' failure to indicate any such purpose argues against appellants' reading. Compare S. Rep. No. 505, 98th Cong., 2d Sess. 1-3 (1984). _______ The truth is that the legislative history of the exception provision is meager. See New York State Motor ___ _____________________ Truck Ass'n v. City of New York, 654 F. Supp. 1521, 1533 ___________ __________________ (S.D. N.Y. 1987), aff'd 833 F.2d 430 (2d Cir. 1987) (quoting _____ two rather uninformative sentences). Among other changes in 1984, Congress expanded somewhat the protected radius in which truck tractor-semi-trailers could operate to include their points of loading and unloading. Since this was a concern to state officials, S. Rep. No. 505 at 1-3; 654 F. Supp. at 1531, Congress evidently balanced this change by adding subsection (b) as a counter-weight.  ____________________ 1Section 412 of the Surface Act, 96 Stat. at 2160, provided: No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this title between (1) the Interstate and Defense Highway System and any other qualifying Federal-aid Primary System highways as designated by the Secretary, and (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers. -11- -11- We appreciate that, as appellants point out, three district courts have made references to the "reasonable access" provision as one directed to safety.2 But the state restrictions with which those cases were concerned were wholly different from and far more intrusive than the Plaistow ordinance and order, including blanket limitations on the distance vehicles could freely travel off the national network and burdensome prior approval provisions for the use of local roads. See 681 F. Supp. at 339-40; 654 F. Supp. at ___ 1529-30; 647 F. Supp. at 1484-88. Safety is obviously a paramount reason for limiting access; but, in our view, it is not the only reason permitted by Congress. Having concluded that the district court correctly construed the Surface Act, we have no occasion to review the court's further, fact-specific decision that the Plaistow restrictions in this case did permit reasonable access. The appellants scarcely bother to argue the point; in a couple of sentences, they simply assert that the district court findings show that a truck terminal must operate 24 hours a day. The opinion does not make such a finding, and we think appellants' cursory argument waives the factual issue in this  ____________________ 2A.B.F. Freight System, Inc. v. Suthard, 681 F. Supp. ____________________________ _______ 334, 341 (E.D. Va. 1988); New York State Motor Truck, 654 F. ___________________________ Supp. at 1539; Consolidated Freightways Corp. of Delaware v. ___________________________________________ Larson, 647 F. Supp. 1479, 1483-84 (M.D. Pa. 1986), rev'd on ______ ________ other grounds, 827 F.2d 916 (3d Cir. 1987), cert. denied, 484 _____________ ____________ U.S. 1032 (1988). -12- -12- case. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), _____________ _______ cert. denied, 494 U.S. 1082 (1990). ____________ 3. The truckers next contend that the curfew violates the Hazardous Materials Transportation Uniform Safety Act of 1990 ("the Materials Act"), 49 U.S.C. 5101 et seq. The _______ Materials Act establishes uniform, national rules for the transportation of hazardous materials and, together with its accompanying regulations, creates an elaborate scheme for the designation, handling, packaging, labeling, and shipping of hazardous materials. Like the Surface Act, the Materials Act contains an express preemption clause, which reads in relevant part as follows: 5125. Preemption (a) General.--Except as provided in subsections (b), (c), and (e) of this section and unless authorized by another law of the United States, a requirement of a State, political subdivision of a State, or Indian tribe is preempted if-- (1) complying with a requirement of the State, political subdivision, or tribe and a requirement of this chapter or a regulation prescribed under this chapter is not possible; or (2) the requirement of the State, political subdivision, or tribe, as applied or enforced, is an obstacle to accomplishing and carrying out this chapter or a regulation prescribed under this chapter. The truckers contend that the curfew is preempted by the second provision of the general preemption clause, because it interferes with "the federal speedy-transport mandate," N.H. ____ -13- -13- Motor Transport Ass'n v. Flynn, 751 F.2d 43, 51 (1st Cir. _____________________ _____ 1984), codified at 49 C.F.R. 177.853(a): " [a]ll shipments of hazardous materials shall be transported without unnecessary delay, from and including the time of commencement of the loading of the cargo until its final discharge at destination." Much of the Plaistow freight is classified as hazardous. Because the Plaistow curfew necessarily entails a delay for hazardous materials, the truckers say that it violates the Materials Act. By using the word "unnecessary," the regulations indicate that some delays are necessary and acceptable. See ___ National Tank Truck Carriers, Inc. v. City of New York, 677 ___________________________________ _________________ F.2d 270, 275 (2d Cir. 1982) (construing prior version of statute). Once again, appellants make little effort to show that on the present record the specific curfew requirements imposed by Plaistow create any risk to the drivers of the trucks, other highway traffic, Plaistow or any other community. The substance of the appellants' brief on appeal is that any regime that creates a possibility of a 12-hour delay in delivery ipso facto automatically imposes ____________ "unnecessary" delay.  A general, state-wide restriction is obviously more vulnerable to attack both because its impact is likely to be much greater and because it treats alike all situations regardless of need or danger. See A.B.F. Freight System, ___ _____________________ -14- -14- 681 F. Supp. at 345. Quite possibly a local restriction might also unjustifiably interfere with hazardous shipment movements, either standing alone or in combination with restrictions in other communities. But the burden is upon those who attack the restriction is show the impact. At least on this appeal, appellants have not even attempted a serious fact-specific showing. This case is quite unlike National Tank Truck Carrier, _____________________________ Inc. v. Burke, 698 F.2d 559 (1st Cir. 1983), in which we ____ _____ affirmed a decision striking down Rhode Island's state-wide curfew and permitting procedure for transporting certain liquid gas on any Rhode Island roadway. By contrast, the curfew at issue here involves one terminal, is tailored to specific local conditions, and imposes no time restriction on the delivery of hazardous materials in New Hampshire so long as the Plaistow terminal is not used as a point of interchange. 4. The truckers also challenge the district court's dismissal of their claim under the Noise Control Act of 1972 ("the Noise Act"), 42 U.S.C. 4901 et seq. 863 F. Supp. at _______ 67-68. That statute created a federal regulatory scheme to set noise emission levels for motor carriers engaged in interstate commerce. Because the curfew was imposed in part to eliminate the noise caused by trucks, the truckers say that it is preempted by the Noise Act. -15- -15- The federal noise regulations pertaining to motor carriers do nothing more than set minimum and maximum decibel levels and exhaust system and tire standards for trucking equipment that may operate on public roadways. 40 C.F.R.  202.20-202.23. Accordingly, no state or town may set different decibel levels for motor carriers operating within its jurisdiction. But neither the Plaistow curfew order nor the ordinance it enforces purports to regulate the decibel levels, exhaust systems, or tires of individual trucks. Rather, noise levels were one element of an equation that also included "odors, dust, smoke, refuse matter, fumes . . . and vibration" and that prompted a limitation on operating hours for one specific site. The Noise Act preemption clause underscores the limited reach of that statute. It provides in relevant part as follows: [A]fter the effective date of a regulation under this section applicable to noise emissions resulting from the operation of any motor carrier engaged in interstate commerce, no State or political subdivision thereof may adopt or enforce any standard applicable to the same operation of such motor carrier, unless such standard is identical to a standard applicable to noise emissions resulting from such operation prescribed by any regulation under this section. 42 U.S.C. 4917(c)(1). Admittedly, the statutory language is general ("any standard applicable to the same operation"); but we think that it would stretch the words beyond their ordinary meaning to strike down a local curfew order based on -16- -16- a range of concerns where federal law regulates only the decibel levels of the equipment. The Noise Act was not designed to remove all state and local control over noise; on the contrary, the statute says that "primary responsibility for control of noise rests with State and local governments. . . ." 42 U.S.C. 4901(a)(3). 5. Finally, appellants argue that the Plaistow curfew is preempted under the Commerce Clause itself even if it does not offend any of the individual statutes relied upon by appellants. Since Congress has enacted its own legislative test for this case ("reasonable access"), one might ask whether it is proper for the courts to resort separately to the more general Commerce Clause rubrics. Cf. White v. ___ _____ Massachusetts Council of Construction Employers, Inc., 460 ________________________________________________________ U.S. 204, 213 (1993). Be that as it may, applying the general Commerce Clause tests does not alter the result. Absent any statute at all, the courts ask--in a case not involving discrimination against interstate commerce--whether "the burden [on interstate commerce imposed by the local restriction] is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, ____ __________________ 142 (1970). The district court found no violation in this case. Even if we reviewed this fact-specific legal determination de novo, cf. Bose Corp. v. Consumers Union of _______ ___ __________ __________________ -17- -17- United States, Inc., 466 U.S. 485, 501 & n.17 (1984), our ___________________ conclusion would be the same. Starting with "burden," in this case a night-time curfew prevents arrivals and departures at one terminal, at one location in the state, during six late-night hours (from 11 p.m. to 5 a.m.) with lesser restrictions for three hours (from 5 a.m. to 6 a.m. and from 9 p.m. to 11 p.m.). For 15 hours of the day (from 6 a.m. to 9 p.m.), there are no __ limitations. The curfew does disadvantage this terminal vis- ____ a-vis other terminals not so restricted, and somewhat impairs _____ its profits; but the magnitude of the disadvantage is not easy to isolate. The evidence showed that customers often want early morning delivery, and in some cases the curfew does limit the ability of the Plaistow/Newton terminal to make such deliveries. On the other hand, there is no indication that customers cannot be served from other terminals or that the flow of commerce into and out of New Hampshire is seriously affected. No state wide restriction is involved, compare _______ Kassel v. Consolidated Freightways Corp., 450 U.S. 662 ______ ________________________________ (1981), nor is a major artery of commerce severely constricted, compare Southern Pacific Co. v. Arizona, 325 _______ _____________________ _______ U.S. 761 (1945). On the other side of the scale, the impact on local residents is not some remote or conjectural specter. The -18- -18- curfew order was obtained only because of local experience with the terminal; and residents testified at trial about the effect on their lives of unrestricted deliveries. The curfew is akin to zoning and traffic restrictions traditionally applied on a local level, cf. Christensen v. Yolo Cty. Bd. of ___ ___________ ________________ Supervisors, 995 F.2d 161, 166 (9th Cir. 1993); Interstate ___________ __________ Towing Ass'n, Inc. v. Cincinnati, 6 F.3d 1154, 1163-65 (6th ___________________ __________ Cir. 1993), and there is no regulation by federal authorities that provides substitute protection. In sum, the burden of the curfew on interstate commerce has not been shown to be excessive in relation to the benefits. Congress has great latitude to order preemption, and calibrate it with precision, based on a legislative judgment that local regulation threatens interstate commerce. The dormant Commerce Clause, by contrast, is a fairly blunt instrument; and absent discrimination, courts may reasonably insist on a fairly clear showing of undue burden before holding unconstitutional a traditional example of local regulation. See Raymond Motor Transportation, Inc. v. Rice, ___ ___________________________________ ____ 434 U.S. 429, 443-44 (1978). That showing has not been made on the record before us. Affirmed. ________ -19- -19-